UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.P.,

    Plaintiff,

  v.

MERRICK GARLAND, et al.,

    Defendants.

Case No. 23-cv-00612-AMO

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

    Petitioner J.P.[1] is a noncitizen from Mexico who is currently in U.S. Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. He has been in immigration detention for 21 months without having received an individualized determination of whether he poses a risk of flight or a danger to his community. He brings this petition for habeas corpus, asking the Court to release him or order a bond hearing at which the Government must demonstrate that further detention is warranted.

    Respondents Merrick B. Garland, the United States Attorney General; Alejandro Mayorkas, Secretary of the Department of Homeland Security; Tae Johnson, Acting Director of ICE; and Moises Becerra, Field Office Director for ICE's San Francisco Field Office, oppose the Petition, arguing that the Court lacks jurisdiction, and that J.P. is not entitled to release or a bond hearing.

    Having reviewed the arguments and records in this case, the Court **GRANTS** the Petition in part. The Government must provide J.P. with a constitutionally sufficient bond hearing before an Immigration Judge within **14 days** from the date of this Order, where the Government will bear

---

[1] Petitioner is proceeding under the initials "J.P." pursuant to this Court's order. ECF 10.

the burden of proving by clear and convincing evidence that J.P. remains a flight risk or danger to the community. If the Immigration Judge does not issue a decision within **14 days** of the bond hearing, J.P. **SHALL** be released from detention.

### I. BACKGROUND

J.P. has been in federal custody since October 29, 2021, when he was released from state custody on a conviction for voluntary manslaughter and immediately taken into custody by ICE pursuant to 8 U.S.C. § 1226(c). Petition (ECF 1) ¶¶ 17, 35. On February 10, 2023, J.P. filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the Court to order his immediate release or order his release within 14 days unless Respondents schedule an individualized custody hearing where "the government must establish by clear and convincing evidence that [J.P.] presents a risk of flight or present danger." Petition ¶ 5.

J.P., a citizen of Mexico, has been in the United States since he was only a few months old. Petition ¶ 12; J.P. Decl. (ECF 1-2) ¶ 1. He has four U.S. citizen children, a U.S. citizen fiancée, a U.S. citizen mother, and two U.S. citizen siblings. Petition ¶ 13; J.P. Decl. ¶ 2. As a child, he experienced poverty and violence and lived in a "gang-infested" area. Petition ¶ 19; J.P. Decl. ¶¶ 3-5. J.P. became a father at 15 years old and joined a gang when he was 16 years old. Petition ¶ 23. He has been convicted of multiple criminal offenses, was deported to Mexico when he was 19 years old, and returned to the U.S. less than a week later. *Id.* ¶¶ 24-25; Return (ECF 12) at 6-7.

In September 2015, J.P. pleaded guilty to voluntary manslaughter and was sentenced to state imprisonment for 16 years. Petition ¶¶ 26-27; Return at 7. On October 29, 2021, the date J.P was scheduled to be released on parole, ICE arrested and detained him. Petition ¶ 35; Traverse (ECF 15) at 8-9.

On March 28, 2022, J.P. filed an I-589 application for Asylum, Withholding, and protection under the Convention Against Torture. Petition ¶¶ 52-54. After two hearings in May and June 2022, the Immigration Judge denied all requested immigration relief in an oral decision and ordered J.P.'s removal to Mexico. *Id.* ¶¶ 55-56. J.P. timely appealed the Immigration Judge's denial on July 26, 2022, and his appeal remains pending. *Id.* ¶¶ 57-59.

///

## II. JURISDICTION

J.P. filed this habeas petition pursuant to 28 U.S.C. § 2241, which allows district courts to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). J.P. asserts that his continued detention violates his due process rights under the Fifth Amendment of the United States Constitution, naming the Director of the San Francisco Field Office as one of the respondents. Petition ¶¶ 4, 16. Respondents argue that jurisdiction and venue are proper in the Eastern District of California where J.P. was detained at the time of filing, citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Return at 8. However, Respondents do not seek to dismiss the Petition on this basis and do not argue that this Court lacks jurisdiction. *Id.* Any such argument would run squarely counter to Ninth Circuit precedent that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir. 2011)). Moreover, since the Director of the San Francisco Field Office is the proper respondent and falls within this Court's jurisdiction, it is of little consequence where Petitioner is detained so long as he remains in the Director's custody. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (citing *Padilla*, 542 U.S. at 442-44); *see, e.g.*, *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4 (N.D. Cal. Mar. 31, 2023); *see also Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases in the Northern District finding jurisdiction over immigration habeas petitions filed by persons detained by the San Francisco Field Office Director within the Eastern District).

Having found it has jurisdiction to consider the Petition, the Court turns to consider the merits.

## III. ENTITLEMENT TO A BOND HEARING

J.P. argues that his continued detention without a bond hearing violates his Fifth Amendment due process rights. He contends that due process requires that the Government provide him an individualized bond hearing. Petition ¶¶ 76-78. In the alternative, he asks that the

3

1  Court adopt a "bright-line" six-month standard and find that J.P. is constitutionally entitled to a
2  bond hearing because his detention has lasted for more than six months. *See id.* ¶ 75. In response,
3  Respondents argue that under the reasoning in *Demore v. Kim*, 538 U.S. 510 (2003), "detention
4  under Section 1226(c) is constitutional so long as the statutory purpose of preventing certain
5  criminal noncitizens from fleeing is being fulfilled, as it undoubtedly is here." Return at 9.

The Court first considers J.P.'s claim for relief under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (conducting as-applied due process analysis under *Mathews*); *Salesh P.*, 2022 WL 17082375, at *8 (same); *Perera v. Jennings*, No. 21-CV-04136- BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021) (same).

## A. Individualized Bond Hearing

Under the three-part *Mathews* test, courts determine whether Section 1226(c), as applied, satisfies due process. Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (citation omitted). Under *Mathews*, courts consider (1) the individual's private interest that will be impacted by the official action, (2) the risk of erroneous deprivation of that interest and the probable value of additional procedural safeguards, and (3) the government's interest. *Id.* at 334-35.

### 1. Individual's Interest

The "main private interest at stake" is J.P.'s interest in "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Perera*, 2021 WL 2400981 *4 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

In this case, J.P. has been detained for 21 months without a bond hearing and there is no reasonably certain end to his detention. J.P. asserts that, given the status of his pending appeal

4

before the BIA, a final decision on his removability could take more than a year. Petition ¶ 60. Respondents do not dispute this timeline, but instead assert that J.P.'s detention will end at the conclusion of his removal proceedings. Return at 9.

Given the uncertainty as to when those proceedings will conclude, the resulting period of detention, in addition to the 21 months that J.P. has already been detained, weighs toward a strong private interest. *See Perera*, 2021 WL 2400981, at *4 (citation omitted) (finding an "overwhelming" interest "regardless of the length of [petitioner's] immigration detention [] because 'any length of detention implicates the same' fundamental rights"); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable imprisonment" where he had been detained for one year without a bond hearing); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private interest where the petitioner had been detained for 22 months and received his last bond hearing 16 months prior).

Respondents do not meaningfully dispute that J.P. has a strong interest in being free from government detention. Instead, they argue that J.P. has a diminished interest because he is "asserting . . . a right to be at liberty in the United States, despite being removable for having committed felonies." Return at 16. However, the Supreme Court rejected an identical argument in *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001). The *Zadvydas* Court explained that while the "the Government argues that, whatever liberty interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to 'liv[e] at large in this country' . . . The choice, however, is not between imprisonment and the alien 'living at large' . . . It is between imprisonment and supervision under release conditions that may not be violated." *Id.* This Court similarly rejects Respondents' argument here.

The Court further rejects Respondents' argument that J.P. failed to use available administrative processes such as contesting his mandatory detention before an Immigration Judge. Return at 17. The *Joseph* hearing that Respondents reference provides noncitizens the opportunity to contest whether the government "properly included [the noncitizen] within a category that is subject to mandatory detention." *Matter of Joseph*, 22 I&N Dec. 799, 805 (BIA 1999) (citing 8

5

1  C.F.R. § 3.19(h)(2)(ii)).  J.P. does not contest that he is subject to mandatory detention.
2  Accordingly, he could not benefit from such a hearing, and his failure to request one does not
3  diminish his strong private interest.  *See Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667,
4  at *8 (N.D. Cal. Apr. 12, 2020) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017))
5  (exhaustion of administrative remedies is "prudential," and courts may waive exhaustion where
6  "administrative remedies are inadequate or not efficacious, [or] pursuant of administrative
7  remedies would be a futile gesture").  Further, J.P. claims a violation of his constitutional rights,
8  which immigration courts do not have the authority to consider.  *See Matter of R-A-V-P-*, 27 I&N
9  Dec. 803, 804 n.2 (BIA 2020) ("We do not have the authority to entertain constitutional
10 challenges to the statutes and regulations we administer"); *Liu v. Waters*, 55 F.3d 421, 425 (9th
11 Cir. 1995) ("the BIA lacks jurisdiction to adjudicate constitutional questions"); *see, e.g.*, *Doe v.
12 Barr*, 2020 WL 1820667 at *8 (finding waiver of exhaustion appropriate where petitioner's claim
13 was based on the Fifth Amendment and was thus beyond the jurisdiction of immigration courts).
14 Thus, the Court concludes that J.P.'s failure to request a *Joseph* hearing does not negatively
15 impact the interests at stake.

16 Respondents also contend that J.P.'s "time in detention is principally due to his own
17 litigation choices," noting his requests for continuances and time for his attorney to prepare.
18 Return at 11-12.  Respondents' arguments are unpersuasive.  Even assuming J.P.'s continuances
19 caused his continued detention, Respondents only attribute four months to those requests.  Return
20 at 17.  J.P. has been detained for 21 months.  Moreover, some of the delay is attributable to the
21 Government moving to change venue twice, and to technical and scheduling issues outside of
22 J.P.'s control.  Petition ¶ 49; Kavanaugh Decl. (ECF 1-3) ¶¶ 7-9.  Regardless, Respondents do not
23 contend, nor is there evidence to suggest, that J.P. purposefully delayed the proceedings.  Indeed,
24 "[t]he duration and frequency of [such] requests do not diminish [J.P.'s] significant liberty interest
25 in his release or his irreparable injury of continued detention without a bond hearing."  *Hernandez
26 Gomez*, 2023 WL 2802230, at *4.

27 In light of J.P.'s interests in being free from detention, the Court finds that the first
28 *Mathews* factor weighs in J.P.'s favor.

### 2. Risk of Erroneous Deprivation of Private Interest

The Court next examines the value of additional safeguards given the risk of erroneous deprivation of J.P.'s rights. *See Mathews*, 424 U.S. at 335. Respondents argue that there is "no risk of an erroneous finding that Petitioner is subject to [mandatory detention under] § 1226(c)." Return at 13. The Government misconstrues the second factor. There is no question that J.P. is subject to mandatory detention under Section 1226(c) – J.P. concedes as much. Traverse at 26. Nonetheless, he maintains a "strong interest in only being detained if the government can adequately show he is a flight risk or threat to the community." *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *9 (N.D. Cal. Dec. 22, 2020); *see also Pham*, 2023 WL 2744397 at *6 n.9 (citing *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) (finding a risk of erroneous deprivation even though petitioner was subject to mandatory detention as "successful due process challenges to mandatory detention would require additional process" such as a bond hearing).

In the 21 months that J.P. has been deprived of his liberty, he has never had a bond hearing to evaluate the necessity of his ongoing civil detention. In these circumstances, the value of additional procedural safeguards in the form of a bond hearing is substantial given the risk of erroneous deprivation of J.P.'s rights. *See Rajnish*, 2020 WL 7626414, at *9 (holding that "the value added by another hearing is great" where petitioner had been held for nine months since an "unconstitutional" initial bond hearing that "assigned the risk of error to him, not to the government" and there had been "important developments" in the proceedings). Given the lack of process J.P. has received, this factor also weighs in favor of granting J.P.'s request for a bond hearing.

### 3. Government Interest

Respondents argue that there is a "legitimate government purpose" in detaining individuals who are potentially removable given their criminal convictions. Return at 19 (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-65 (9th Cir. 2008) (citation omitted)). However, the government's interest at issue here is "the ability to detain [J.P.] *without providing him with [a] bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in original); *see also Perera*, 2021 WL 2400981 at *5 (same); *Zerezghi*

7

*v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020) (citing *Mathews*, 424 U.S. at 335) (noting that the third factor considers the "burden that the additional or substitute procedural requirement would entail," not the government's substantial interest in immigration enforcement "in general").

Respondents do not explain how providing J.P. with a bond hearing after 21 months of detention would undermine their interest in detaining individuals who are a flight risk or dangerous to the community. *See Perera*, 2021 WL 2400981 at *5 ("Requiring the government to provide Perera with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk"); *see also Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *8 (N.D. Cal. May 2, 2023) (same); *Hernandez Gomez*, 2023 WL 2802230 at *4 (same). Accordingly, the Government's interest here is minimal compared to J.P.'s interest in being free from detention.

Having weighed the *Mathews* factors, the Court concludes that J.P.'s continued detention without an individualized bond hearing violates his due process rights under the Fifth Amendment. Because the Court grants J.P.'s habeas petition on this basis, it need not consider whether to adopt a "bright-line" rule that individuals detained under Section 1226(c) are entitled to a bond hearing after six months.[2]

### B. Burden of Proof

The parties also dispute whether the Government bears the burden of proof should the Court order a bond hearing. J.P. argues that under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), the government bears the burden of proving by clear and convincing evidence that further detention is warranted. Petition ¶¶ 86-87. Respondents argue that *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), called into question the holding of *Singh*, but that in any event, *Singh* only applies to bond hearings under Section 1226(a), not 1226(c). Return at 22.

---

[2] Courts in this district have declined to adopt a "bright-line" rule, pointing to the "dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (citations omitted); *see, e.g.*, *Diaz*, 2023 WL 3237421 at *8 (same); *Hernandez Gomez*, 2023 WL 2802230, at *3 (same).

The Court agrees with J.P. that the Government bears the burden of proof. In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond," because "civil commitment for *any* purpose constitutes a significant deprivation of liberty." 638 F.3d at 1203-04 (emphasis in original) (citation omitted). *Rodriguez-Diaz* considered whether a second bond hearing was constitutionally required in the Section 1226(a) context, and specifically declined to decide whether *Singh* remains good law in Section 1226(c) cases. *See Rodriguez-Diaz*, 53 F.4th at 1202 & n.4. Thus, "[a]bsent controlling authority to the contrary, the reasoning of *Singh* and its holding remain applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at stake.'" *Pham*, 2023 WL 2744397 at *7 (citation omitted).

The Court follows the reasoning of *Singh* and holds that the Government bears the burden of proving by clear and convincing evidence that further detention is warranted. *See, e.g.*, *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government bears the burden in a constitutionally required bond hearing in the Section 1226(c) context post-*Rodriguez-Diaz*); *Salesh P.*, 2022 WL 17082375, at *9 ("At the hearing, the government must justify his continued detention [under § 1226(c)] by establishing by clear and convincing evidence that he is a flight risk or a danger to the community"); *see also Hernandez Gomez*, 2023 WL 2802230 at *4 (collecting cases that the government bears the burden of proof).

## CONCLUSION

The Court **GRANTS** J.P.'s Petition in part, and **ORDERS** that the Government provide him with a constitutionally compliant bond hearing before an immigration judge within **14 days** from the date of this Order. The Government shall bear the burden of proving by clear and convincing evidence that J.P. is a flight risk or a danger to the community.

///

///

///

///

///

9

If the immigration judge does not issue a decision within **14 days** of the bond hearing, J.P. **SHALL** be released from detention.

**IT IS SO ORDERED.**

Dated: August 7, 2023

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**
